David N. Myers, as Trustee Under the Will of Ira M. Pink, Deceased, Plaintiff-Appellant, v. Libbie Pink, Individually and as Executor Under the Will of Ira M. Pink, Deceased, and the First National Bank of Chicago, a National Banking Association, as Trustee Under the Will of Ira M. Pink, Deceased, Defendants-Appellees.

Gen. No. 49,174.

First District, First Division.

July 1, 1963.

Lord, Bissell & Brook, of Chicago (Theodore C. Diller and Barnet C. Engler, of counsel), for appellant.

Sonnenschein, Levinson, Carlin, Nath & Rosenthal, of Chicago (John J. Faissler and Bernard J. Nussbaum, of counsel), for appellee, Libbie Pink, and Tenney, Bentley, Guthrie & Howell, of Chicago (W. S. Warfield III, of counsel), for appellee, Bank.

MR. JUSTICE BURMAN delivered the opinion of the court.

This is an appeal from an order denying plaintiff-appellant's motion for a temporary injunction restraining the executor of Ira M. Pink's estate from voting 122,459 shares (about 24%) of the stock of the Englander Company, Inc., a Delaware corporation, at a meeting of the stockholders called for May 9, 1963, to elect directors, and from interfering with the right of the trustees to vote this stock. Plaintiff, David N. Myers, deceased's brother-in-law, is one of the named trustees under the will. The defendants

are deceased's widow and executor of his estate, Libbie Pink, and the other cotrustee named in the will, The First National Bank of Chicago.

Ira M. Pink, president of Englander, died on December 5, 1961, and the parties to this action are in agreement that the issue herein involved must be determined by ascertaining Mr. Pink's intention as expressed in his will. Mr. Pink's will, admitted to probate in the Probate Court of Cook County on December 19, 1961, is a lengthy document and not all of its provisions are pertinent to this appeal.

After first bequeathing his personal effects and making a devise to the Ira M. Pink Foundation (the larger of the following amounts: 2% of the net amount of the estate as adjusted and determined for Federal Estate Tax purposes or $50,000), Mr. Pink devised the residue of the estate to two testamentary trusts. The first trust, Trust A, was established in an amount equal to the marital deduction allowable. Libbie Pink was named sole beneficiary to this trust for her lifetime and was given power of appointment at her death. The rest, residue and remainder of the estate was bequeathed to a second trust, Trust B.* Mrs. Pink was named life beneficiary to this trust also and upon her death the trustees were directed to establish separate trusts for each of the deceased's two children.**

Mr. Pink named as cotrustees the two parties mentioned above and then, by article eight of the will, described their authority. In pertinent part, he provided:

---

* Several minor bequests were directed to be made upon the creation of Trust B but these bequests are not pertinent to this appeal.

** Further provisions of the will provide for the death of the children but these provisions are also not pertinent to this appeal.

Section 1. The Trustees are granted the following powers with respect to the various trusts herein created and the property and interests therein, at any time forming a part of such trusts (herein called the "trust assets") to be exercised from time to time by the Trustees in a fiduciary capacity as the Trustees of the beneficiaries, except that the Trustees shall not have any power or discretion with respect to Trust A or its assets the possession of which would deprive my estate of any portion of the marital deduction allowable to my estate for Federal Estate Tax purposes, even though any particular power or discretion may not, by specific provision herein, be expressly made inapplicable to Trust A or its assets.

. . .

(f) To vote, either in person or by general or limited proxy, for any purposes (including for the election of a trustee or beneficiary as a director), or to refrain from voting any corporate securities or other trust having voting rights, and to enter into voting trusts and similar arrangements.

. . .

Mr. Pink then provided that a majority of the adults legally competent had the right to designate a corporate trustee to replace the corporate trustee acting under the will.

Testator then named his widow executor of his estate and by article fourteenth, described her powers, providing:

Section 1. During the period of the administration of my estate my Executor shall have all of the powers given to the Trustees with respect to

233

the trusts and the trust assets and may join with the Trustees in the exercise of such powers.

Section 2. I authorize my Executor to sell, exchange, transfer and convey any and all of my property, real and personal, legal and equitable and wherever situated, at public or private sale, for such consideration (either for cash or on credit or partly for cash and partly for credit) with such security or without security and on such terms and conditions as my Executor shall determine, . . . .

Section 3. I authorize my Executor to borrow money, to extend or renew any existing indebtedness, and to mortgage or pledge any and all of my property as security therefor; to collect, pay, contest, litigate, compromise or abandon claims and demands of and against my estate; and to postpone distribution of my estate pending the final determination of all its tax liabilities.

. . .

Section 6. My Executor may act in accordance with the provisions of this will without application or confirmation by any court and shall also have all powers which are now or may hereafter be granted by law, statute or rule of court.

On April 9, 1963, the Court of Chancery of New Castle, Delaware, ordered a shareholders' meeting of the Englander Company on May 9, 1963, for the purpose of electing a new board of directors. A special master was appointed to hold the meeting. The instant action was initiated to determine who had the right to vote the shares of stock held by the estate, still registered in the corporate books of Englander in the name of Ira M. Pink.

Plaintiff then sought to obtain an injunction preventing the executor from voting the stock. Al-

234

■■■

though the Englander Company is a Delaware Corporation, it is for the Illinois courts to determine who shall vote the shares of stock held by the estate because Mr. Pink died a resident of Cook County, Illinois and his estate is being probated here.

After the Chancellor refused to issue the injunction, but before this appeal was orally argued, the stockholders' meeting ordered by the Delaware court was held, presided over by a Master appointed by the Delaware court. By agreement among the parties two ballots were taken. On the first ballot Mrs. Pink, as Executor, voted the shares held by the estate and by voting them in conjunction with other shares held by herself and other proxies (including those of her two daughters), Mrs. Pink was able to elect four of the seven directors. Mr. Myers' faction was able to elect the remaining three directors. The second ballot was then taken, this time on the assumption that the executor could not, by herself, vote the shares held by the estate. By this ballot Mr. Myers' faction was able to elect four directors.

Plaintiff attempted to vote the shares held by the estate on the second ballot, but the cotrustee bank announced that it declined to vote the shares, and the Master sustained an objection to plaintiff's voting the shares alone. In its brief the bank states that plaintiff filed this action without any consultation with it and when informed of the action, when suit was filed, it refused to join as co-plaintiff on the ground that any attempt by the trustees to vote the stock would be "an unwarranted invasion of the Executor's rights, contrary to the will of the testator."

■ The order appealed from in the instant case, denying plaintiff's request for a temporary injunction, stated, in pertinent part, as follows:

And it appearing to the court that defendant, Libbie Pink is the duly appointed, qualified and

235

acting executor under the will of Ira M. Pink, and as such holds all personal property belonging to said estate, including 122,459 shares of common stock of The Englander Company, Inc., and

It further appearing to the court that the estate of Ira M. Pink, Deceased, is still pending in the Probate Court of Cook County, Illinois; and

It further appearing to the court from the consideration of the Will of Ira M. Pink, Deceased, and each provision thereof, that it was the intention of the testator that defendant, Libbie Pink, as Executor under said Will, should have the exclusive power to vote the 122,459 shares of Englander stock held by her as Executor, during the period of the administration of the estate prior to distribution of said shares of stock;

It Is Ordered that said motion for temporary injunction in accordance with paragraph (d) of the prayer for relief of the amended complaint is hereby denied.

Although the amended complaint requested additional relief and although both parties to this appeal have argued other issues, this court is solely concerned with the order appealed from, namely the denial of the temporary injunction.

The appeal to this court from the interlocutory order of the Superior Court refusing an injunction is specifically authorized by Section 78(1) of the Civil Practice Act (Ill Rev Stats 1961, c 110, § 78(1)). Under subsection 4 of section 78, an appeal of this character takes precedence over other cases. Both parties to this litigation expressed the desire that the appeal may be decided before the entry of a decree by the Delaware Chancellor which, we were informed, was likely to be entered before June 5, 1963. Accordingly, we set this matter for oral argument on May 27 and on May 31, we entered the following order:

"The order of the trial court denying plaintiff's motion for temporary injunction will be unanimously affirmed upon the filing of our opinion which will find that the executor of Ira M. Pink's Will had the right to vote the block of stock in question."

It is plaintiff's position that, unless a contrary intent is evident from the will, a testamentary trust becomes effective on the death of the testator. State Bank of Chicago v. Gross, 344 Ill 512, 176 NE 739; 36 ILP, Wills, sec 421; 96 CJS, Wills, sec 1023(f). We agree with this statement of the law, but we do not agree with plaintiff's further contention that an injunction should have been granted because the trustees have the right to vote the stock during the period of probate.

██ A will must be construed, if possible, to uphold all parts of the will and to give effect to each provision thereof, and no clause, words, or language should be arbitrarily rejected as meaningless, insignificant, or surplusage except from absolute necessity. 36 ILP, Wills, sec 211. Further, effect will be given to testator's intention so long as it can be done consistently with the rules of law. Thus, the testator can give either trustees or his executor authority to vote shares of stock held by the estate and the law will give effect to his wishes. Babcock v. The Chicago Ry. Co., 325 Ill 16, 155 NE 773.

We must note that the named executor is testator's widow, the sole income beneficiary of his estate. A reading of the parts of the will describing the executor's powers indicates that testator placed great trust and confidence in his named executor and intended her to have the broadest possible authority. It is true that the entire estate, with minor exceptions, would be divided among two trusts, but testator did not direct that any specific property held by him at his

death should go to either trust. Rather, he authorized his executor "to sell, exchange, transfer and convey any and all of my property." No property was excluded from this provision, not even the shares of the Englander corporation testator headed during his lifetime. Testator further directed that his executor was to have "all the powers given to the Trustees" during the period of administration of the estate. And, as set forth previously, one of the specific powers given the trustees was the power to vote the shares of stock.

██ In addition, the first trust, Trust A, was not established in a predetermined amount, but is to be "equal in value to the maximum amount of the marital deduction allowable to my estate for Federal Estate Tax purposes." But the will further directs the executor to distribute the property to the trusts, but that no distribution is to be made until the Federal Estate Taxes are finally determined. We agree with plaintiff that testator also placed great trust and confidence in his two named trustees and specifically provided that they were to have the power to vote stock held by the trusts. Plaintiff contends that these were powers granted to the trustees during the period of administration and regardless of distribution by the executor. However, by section one of article eighth of the will, the trustees' authority and power is with respect to "trust assets." And, by further provisions of the will describing the executor's power, the "trust assets" can be determined only when the period of administration has ended. From this language coupled with the language describing the executor's authority (that the executor shall have the power of the trustees during administration and distribution shall not be until Federal Estate Taxes are determined) we can only conclude that the executor presently has the authority to vote the stock.

238

Plaintiff cites Cooper v. Citizens Nat. Bank of Waco, 267 SW2d 848 (Tex Civ App 1954), wherein the executor was ordered to deliver shares of stock to the trustee so that the trustee could vote the stock during the period of probate. The court recognized the general rule that, "[w]here corporate stock is among the assets of an estate under administration, generally the Administrator or Executor has the right to vote the stock pending administration." 267 SW2d at 851. The court then stated there were factors present taking that situation out of the general rule. The executor had already endorsed the certificates and requested transfer of the shares to the trustee and the court gave effect to testator's intent that the stock be turned over to the trustee as soon as practicable. The court also noted "that the will authorized the Executor to sell and dispose of any portion of the testator's estate at public or private sale and in such manner as may seem best to the Executor, *but it specifically excepted from the sale that portion of the estate specifically devised and bequeathed which included the stock* [involved in the litigation.]" 267 SW2d at 852. (Emphasis in original.) None of these factors are present in the instant case. Rather, we have a situation involving the exact opposite set of facts.

Plaintiff further cites Redmer v. Hakala, 344 Ill App 25, 99 NE2d 831, but there the Appellate Court stated that the will unequivocally and specifically bequeathed the stock in question to the trustee and further provided that the privilege of voting the stock belonged to the plaintiff. Moreover, the controversy there was between plaintiff, who was both a cotrustee and coexecutor under the will, and defendant, who had erroneously been appointed administrator.

Rosencrans v. Fry, 12 NJ 88, 95 A2d 905, is also cited by plaintiff, but it is no authority for determining who has voting rights, the trustee or executor.

239

There, Fry had been named cotrustee of a trust composed of certain shares of stock owned by decedent. He attempted to exercise an option to purchase, granted under the will, and the widow, executrix of the estate, attempted to defeat the purchase by not distributing the stock to the trust. The court rejected executrix' contention holding that she could not in that manner defeat testator's intent.

Finally, plaintiff contends that Section 1 of Article Fourteenth confers no power whatever on the executor alone. This provision provides:

> During the period of administration of my estate my Executor shall have all of the powers given to the Trustees with respect to the trust assets and may join with the Trustees in the exercise of such powers.

It must be noted that in granting the authority to the executor, the testator used the mandatory "shall" while the clause concerning joining with the trustees in exercise of the power uses the permissive "may." These two words are not identical in meaning. Townsend v. Winburn, 107 Misc 443, 177 NYS 757. Had testator intended his executor to have the authority during the period of administration only in conjunction with the trustees, he would not have used the permissive "may." Testator was a highly successful businessman and he had the assistance of competent counsel in drafting his will. We can only give effect to the entire paragraph and conclude that testator intended his executor to have full authority during the period of administration, but gave her permission to confer with the trustees in exercising the power.

Although it is not a determinative factor, it can be noted that at the first shareholders' meeting held after testator's death (in 1962), Mrs. Pink, as executor,

voted the stock held by the estate with no objection by plaintiff.

We can only conclude that at this stage of the proceeding, while the estate is being probated, the temporary injunction was properly denied, for it appears that testator intended the executor to have voting rights during the period of administration. Therefore, the order appealed from is affirmed.

Affirmed.

ENGLISH, PJ and MURPHY, J, concur.