**Glenn KUPER, et al., Plaintiffs,**

v.

**QUANTUM CHEMICAL CORPORATION, et al., Defendants.**

**No. C–1–91–918.**

United States District Court, S.D. Ohio, W.D.

Oct. 27, 1993.

Russell Kelm, Juan Jose Perez, Marion H. Little, Jr., Schwartz, Kelm, Warren & Rubenstein, Columbus, OH, for plaintiffs.

James Adams, Cincinnati, OH, for defendants.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon Defendants' Motion for Summary Judgment (Doc. no. 43) and Plaintiffs' Supplemental Memorandum in Opposition thereto (Doc. no. 54). For the reasons stated below, defendants' motion is hereby GRANTED in part and DENIED in part.

### Procedural Background

Plaintiffs bring claims under The Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1101, et seq. Plaintiffs are former employees of the Emery Division (Emery) of Quantum Chemical Corporation (Quantum) who participated in employer-sponsored stock ownership plans prior to Quantum's sale of the Emery Division. Their claims arise out of the "dimunition in value" of plaintiffs' stock over an 18–month period when the stock was held in the employer-sponsored plans. Defendants contend that they are entitled to judgment as a matter of law on plaintiffs' ERISA claims because (1) plaintiffs lack standing to pursue their claims; (2) defendants Quantum and the individual directors are not fiduciaries under ERISA; and (3) the remaining individual defendants are not alleged to have breached any obligations cognizable under ERISA.

On July 21, 1993, the court issued an order in which it found that plaintiffs had standing to pursue their ERISA claims (Doc. no. 52). The court expressly refrained from making any determinations on the merits of plaintiffs' claims and granted plaintiffs an additional 20 days in which to respond to defendants' remaining contentions. Plaintiffs have submitted their response and this matter is now before the court on the remaining issues.

### Undisputed Facts

Quantum was the sponsor of the Quantum Savings & Stock Ownership Plan 401(k) and the Employee Stock Option Plan (ESOP).

Quantum is neither a Plan administrator nor a named fiduciary. Plaintiffs Kuper and Jones were salaried employees of the former Emery division until April 17, 1989 when Emery's assets were sold to the Henkel Corporation (Henkel). These employees were Plan participants.

The Plan was administered by a Committee of not less than three members appointed by Quantum's Board of Directors. The members of the Committee at all relevant times were Howard Burkhardt, F. Donald Brigham, and W. Westin Clarke, Jr. The Plan expressly provides that the Committee's determination as to any disputed question under the Plan "shall be conclusive".

Employer contributions to the ESOP are held in a separate trust and invested by the ESOP trustees in a fund consisting of shares of Quantum Stock. The trustees acquire company stock as directed by the employer and voting stock as directed by the Plan participants. They also hold the assets of the ESOP. The trustees of the ESOP at all relevant times were Harry B. Anderson, Michael Iovenko, and David T. Schmidt.

Chase Manhattan is the Master Trustee of the non-ESOP portion of the Plan. It holds the 401(k) funds in trust and invests them in one of three investment funds. Chase Manhattan is also the custodian of stock certificates issued in connection with the ESOP. Chase Manhattan has no discretionary authority under the Plan regarding the management or distribution of Plan assets.

Under the terms of the sale of the Emery Division to Henkel, all employees of that division continued their employment with Henkel. The terms and conditions of their employment were comparable to those existing immediately prior to the closing date of the sale. In connection with the sale, a trust-to-trust transfer of all securities held for the benefit of any employee under the Plan as of the closing date of the sale was effected. The employees were offered continuing participation in a plan established by Henkel. The trust-to-trust transfer was completed on November 1, 1990. Between March 31, 1989 and November 1, 1990, the trust assets were frozen. The market price of Quantum stock fell from $49.00 to $10.00 during this interim.

## Claims of the Parties

Plaintiffs claim that defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1)(A) by failing to act solely in the interests of the class in providing benefits to them, failing to defray reasonable expenses in administering the Plan, and failing to act with the care of a prudent person acting in a like capacity. Specifically, plaintiffs claim that defendants committed the following breaches: (1) they failed to allow a distribution of assets to Plan participants following the sale of the Emery Division; (2) they failed to prevent the trust-to-trust transfer of assets; (3) they failed to fairly present the financial condition of the company to Plan participants; (4) they failed to monitor the financial condition of the company and to protect Plan assets; and (5) they failed to take steps to reduce losses after learning of an alleged scheme by Quantum and its directors to denude Quantum of its assets and to entrench the Directors in their positions by declaring a $50.00 dividend per share of Quantum stock prior to the sale of the Emery Division.

Defendants present the following arguments in support of their contention that they are entitled to summary judgment: (1) Quantum and its Board of Directors are not fiduciaries under ERISA; (2) even if these parties were fiduciaries, the decision to declare a stock dividend was a non-fiduciary business decision completely unrelated to administration of the Plan; (3) the remaining defendants did not breach a fiduciary duty under the Plan; (4) defendants had no duty to monitor the financial condition of Quantum; and (5) plaintiffs were not terminated and therefore were not entitled to receive a lump sum distribution of assets upon the sale of the Emery division.

Plaintiffs concede that while Plan administration was vested solely in the Committee, there is a factual question as to whether the Board of Directors controlled or influenced decisions regarding administration of the Plan and therefore acted as fiduciaries. Plaintiffs allege that there is a "reasonable

suspicion" that the Board influenced the Committee's decisions in light of the fact that the Committee took no steps to diversify the ESOP fund when the Emery Division was sold and the company had pursued financing efforts that would negatively impact the value of Quantum stock. Plaintiffs contend that because Quantum and the Board of Directors could be deemed fiduciaries under the appropriate factual scenario, and because there is an issue as to whether the fiduciaries acted with due diligence, summary judgment is not appropriate.

### Summary Judgment Standard

The summary judgment procedure under Fed.R.Civ.P. 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Celotex,* 477 U.S. at 321, 106 S.Ct. at 2552; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *Guarino,* 980 F.2d at 405. The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald*

*v. Union Camp. Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

### OPINION

#### A. Claims Against Quantum and the Board of Directors

■ Initially, the court must address plaintiffs' contention that summary judgment is inappropriate at this juncture because factual questions underlying resolution of their claims against Quantum and the Board remain unanswered. Plaintiffs suggest that they do not know the answers to pertinent factual questions because the parties agreed to stay discovery pending resolution of the standing issue raised in defendants' summary judgment motion. However, the fact that counsel imposed a stay of discovery without any court intervention does not excuse plaintiffs' obligation to present sufficient facts to show the existence of a genuine issue for trial, particularly in view of the procedural history of this case. The complaint was filed nearly two years ago on December 27, 1991, and trial is scheduled for November of this year. The discovery cut-off was originally set for October 1, 1992 and was subsequently extended to May 1, 1993. On March 16, 1993, plaintiffs filed a partial response addressing the standing issue raised in defendants' motion for summary judgment. At that time, plaintiffs requested an extension of two weeks following the May 15 discovery cut-off in which to respond to the remaining issues. On June 10, 1993, the discovery cut-off was extended to October 15, 1993. On July 21, 1993, the court issued an order finding that plaintiffs had standing to pursue their ERISA claims and granting plaintiffs an additional twenty days to respond to the remaining issues. Plaintiffs filed a response on August 19, 1993. Thus, plaintiffs have had ample time to develop facts in support of their claims against Quantum and its Board of Directors. Accordingly, it is appropriate to consider whether summary judgment is warranted.

ERISA, 29 U.S.C. § 1002(21)(A), defines a fiduciary as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any

discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

 Both persons named as fiduciaries by a benefit plan, and anyone who exercises discretionary control or authority over the plan's management, administration, or assets, are ERISA fiduciaries. *Mertens v. Hewitt Assocs.,* —— U.S. ——, ——, 113 S.Ct. 2063, 2066, 124 L.Ed.2d 161 (1993); *Libbey–Owens–Ford Co. v. Blue Cross & Blue Shield Mut.,* 982 F.2d 1031 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 72, 126 L.Ed.2d 41 (1993). Under ERISA, a person may be a fiduciary for some purposes but not for others. *Leigh v. Engle,* 727 F.2d 113, 133 (7th Cir.1984). A person who performs purely ministerial functions for an employee benefit plan within a framework of rules and procedures made by other persons is not a fiduciary because he does not have discretionary authority regarding administration of the plan or management of the plan assets. *Flacche v. Sun Life Assurance Company of Canada,* 958 F.2d 730, 734 (6th Cir.1992).

 The United States Court of Appeals for the Sixth Circuit has held that a nonfiduciary may be liable for a breach of fiduciary duty if he aided and assisted a fiduciary in the breach. *Brock v. Hendershott,* 840 F.2d 339 (6th Cir.1988) (citing *Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629, 642 (W.D.Wis.1979).[1] A nonfiduciary's knowledge of the breach can be inferred from surrounding circumstances raising a reasonable inference of knowledge.

*Id.* at 342. Some courts have also found liability on the part of fiduciaries who have not participated in wrongdoing by other fiduciaries but who know of such wrongdoing and take no steps to remedy the situation. *Bryant v. International Fruit Product Co., Inc.,* 886 F.2d 132, 134 (6th Cir.1989) (citing *Chambers v. Kaleidescope, Inc. Profit Sharing Plan Trust,* 650 F.Supp. 359 (N.D.Ga. 1986). However, the fiduciaries must have had the power to prevent the wrongdoing in order for liability to attach. *Id.* at 134–135.

 Under certain circumstances, an employer may be held liable under ERISA. However, liability may be imposed only to the extent the employer exercises the fiduciary responsibility allegedly breached. *Warren v. Oil, Chemical and Atomic Workers Pension F.,* 729 F.Supp. 563, 566 (E.D.Mich. 1989) (quoting *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323 (9th Cir.1985). While an employer may function as both a fiduciary and an employer, ERISA does not preclude an employer from acting in accordance with its interests as employer when neither administering the Plan nor investing its assets. *Berlin v. Michigan Bell Telephone Co.,* 858 F.2d 1154, 1163 (6th Cir.1988). Purely business decisions by an employer are not governed by ERISA's fiduciary standards. *Id.*

 Members of a Board of Directors may also be fiduciaries with respect to a plan established by an employer. Several courts have held that a Board and its members are fiduciaries who must adhere to ERISA's fiduciary standards if they have the power to appoint and remove Plan fiduciaries. *Newton v. Van Otterloo,* 756 F.Supp. 1121, 1132 (N.D.Ind.1991); *see also Leigh,* 727 F.2d at 133–34; *O'Neill v. Davis,* 721 F.Supp. 1013, 1016 (N.D.Ill.1989); *Freund,* 485 F.Supp. at 640. However, a careful review of these cases, and of the Secretary of Labor's bulletin interpreting ERISA published at 29 C.F.R. § 2509.75–8 at D–4, discloses that a

---

1. The United States Supreme Court held in *Mertens* that ERISA does not authorize suits for money damages against nonfiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty. *Mertens,* —— U.S. at ——, 113 S.Ct. at 2063. The Court decided the case on the ground that such damages do not constitute "appropriate equitable relief" under ERISA. Although the Court did not rule on the issue of whether a nonfiduciary can be held liable under ERISA for participating in a fiduciary's breach of fiduciary duty, it strongly suggested in its opinion that a nonfiduciary cannot be held so liable. *Id.* at ——, 113 S.Ct. at 2067. However, for purposes of this opinion, the court need not determine whether *Brock* remains good law.

Board of Directors' fiduciary obligations are not unlimited in such a case. Although under such circumstances the Board members exercise discretionary management or control with respect to management of the plan, and are therefore fiduciaries, their fiduciary obligations are limited to selection and retention of plan fiduciaries.

Applying the law to the facts of this case, the court finds that defendants Quantum and the Board of Directors have satisfied their initial burden of showing the absence of a genuine issue of material fact concerning whether they were fiduciaries with regard to the breaches alleged by plaintiffs. Plaintiffs have failed to come forward with specific facts showing that there is a genuine issue as to whether these defendants were fiduciaries in pertinent respects. First, it is undisputed that Quantum and the Board were not named fiduciaries of the Plan. Second, under the terms of the Plan, defendants did not have any discretionary authority over the plan's management, administration or assets. Rather, such discretion was vested in the Committee members appointed by the Board. In addition, plaintiff has not come forward with any facts which suggest that defendants, in actuality, had such discretionary authority. While plaintiffs contend that defendants may have influenced the decisions of the administrators, they rely only on a "reasonable suspicion" and articulate no specific facts in support of their contention. Plaintiffs' allegation that one can reasonably infer that Quantum and the Board controlled the decisions of the Committee in light of (1) the Committee's failure to diversify the ESOP fund following the sale of the Emery Division, and (2) the company's pursuit of financing efforts that would negatively impact the value of Quantum stock, is insufficient to satisfy plaintiff's burden to show that there exists a genuine issue for trial.

Furthermore, assuming Quantum and the Board had the authority to retain and terminate the trustees of the plan, plaintiffs do not allege that defendants breached a duty in connection with the appointment and removal of trustees. Plaintiffs have also failed to come forward with specific evidence which suggests that defendants knew of wrongdoing by the Plan administrators, that they had the power to remedy the situation, and that they made no attempts to do so. Finally, plaintiffs have presented no evidence which demonstrates that defendants aided and assisted a breach of fiduciary duty by the administrators. For these reasons, the Court finds that plaintiffs have failed to present a genuine issue for trial as to whether Quantum and the Board were fiduciaries for purposes of managing the Plan assets and protecting the value thereof. Accordingly, these defendants are entitled to summary judgment.

### B. Alleged Breaches by Remaining Individual Defendants

■ The basis of plaintiffs' claims of breach of fiduciary duty against the remaining individual defendants is that these defendants failed to exercise reasonable prudence in the administration and handling of the ESOP funds. Plaintiffs allege that defendants should have considered various options to protect Plan assets in light of the continued diminishing value of the Quantum stock. These options included (1) an immediate lump sum distribution of plan assets upon the sale of the Emery Division to Henkel, and (2) diversification of Plan assets. Plaintiffs also claim that defendants breached their fiduciary obligations under ERISA by failing to allow class members who were entitled to exercise annual diversification options to do so in the interim between the sale of the Emery Division and the transfer of the Plan assets.

■ Title 29 U.S.C. § 1104 provides that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries for the exclusive purpose of providing benefits to participants and their beneficiaries. Among a fiduciary's obligations are "the proper management, administration and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Mertens,* —— U.S. at ——, 113 S.Ct. at 2066 (*quoting Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142–43, 105 S.Ct. 3085, 3090, 87 L.Ed.2d 96 (1985)). The fiduciary

must exercise his duties with the care, skill, prudence and diligence that a prudent man would use under like circumstances.

Defendant Committee members and the Plan trustees have failed to show the absence of a genuine issue for trial concerning the alleged breach of their fiduciary duties. These defendants contend that they had no authority to override Quantum's exclusive business decision to declare the special dividend and that they therefore lacked any fiduciary responsibilities with regard to such decision. However, they have not refuted plaintiffs' allegations that they breached their fiduciary duties by failing to take steps to protect the Plan assets in the wake of declaration of the special dividend. Nor have these defendants addressed plaintiffs' claim that they breached their fiduciary duties by failing to allow class members to diversify their assets in accordance with the Plan provisions. Accordingly, these defendants are not entitled to summary judgment.

*Conclusion*

In accordance with the foregoing, summary judgment is hereby GRANTED in favor of defendants Quantum and the Board of Directors. The motion for summary judgment is DENIED with respect to the remaining defendants.

IT IS SO ORDERED.